| | |
|---|---|
| Law Offices of Douglas T. Tabachnik, P.C. | Hearing Date: August 1, 2017 |
| Douglas T. Tabachnik, Esq. | Time:         9:30 AM |
| (Admitted in this District) | |
| 63 West Main Street, Suite C | |
| Freehold, New Jersey 07728 | |
| (732) 780-2760 | |
| Counsel to the Defendant PHEAA d/b/a American Education Services | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

| | |
|---|---|
| In re:<br><br>JACOB J. GREENFIELD AND<br>KASSANDRA M. GREENFIELD,<br><br>Debtors | Chapter 7<br>Case No.: 17-35176 CGM |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY THE DEBTORS[1] TO HOLD PHEAA d/b/a IN CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY**

**PRELIMINARY STATEMENT**

The Debtors, in an effort to attach liability to the Commonwealth of Pennsylvania for an alleged violation of the automatic stay, have strained both the facts and the law applicable to the case at bar. As has been shown in the accompanying certification of M. Tyler Baer, Vice President of Commercial Operations Division of the Pennsylvania Higher Education Assistance Agency ("PHEAA") doing business as the Education Assistance Authority ("AES"), PHEAA has engaged in no conduct that can be characterized as any affirmative action that would violate the proscriptions of the automatic stay. Rather, it appears that the Debtors have conflated the conduct of an independent collection agency separately retained by the owner of Ms. Greenfield's student loan, National Collegiate Trust ("NCT") with that of PHEAA, which

---

[1] PHEAA notes that the motion, while made by the Debtors, clearly references an obligation solely of Kassandra Kristofferson (now apparently called Greenfield), and not of both Debtors. Accordingly, references to the Debtor when used in the singular will refer to Ms. Kristofferson. References to the motion may refer to both Debtors since they are both referred to as movants in the moving papers.

1

engages in no collection activity with respect to the student loans that it administers. Furthermore, the Debtor completely neglected, failed, and refused to verify her correct name when asked to do so by PHEAA, such that PHEAA had no affirmative notice from this Debtor that the loan on their books owed by Kassandra M. Kristofferson was the same debt owed by the Debtor until the Debtor telephoned PHEAA and advised them of same in May of this year.

Furthermore, the Debtors have ignored the clear limitations of the Bankruptcy Code and attempting to attach direct personal liability to the Commonwealth of Pennsylvania for compensatory and punitive damages in excess of those allowed by the statute and the limitations of the waiver of sovereign immunity embedded therein.

## **FACTUAL BACKGROUND**

The Debtor's testimony is both inaccurate and replete with hearsay with respect to the conduct of PHEAA, in connection with efforts alleged to have been taken by PHEAA in the collection of the student loan in violation of the automatic stay. As indicated by the testimony of Mr. Baer, and the business records maintained by PHEAA, PHEAA personnel initiated no contact with the Debtor save for correspondence requesting that she verify the accuracy of her name, that the agency had indications that the name on their files was inaccurate. In fact, the Debtor who never bothered to advise the agency that she had assumed the new name of Greenfield, and then failed and refused to acknowledge her current name so they could ascertain which loan was hers.

Nevertheless, the Debtor incongruously insists that PHEAA was somehow required to divine her new name, apparently assumed subsequent to her procurement of the student loan, and connect the dots to a notice of a bankruptcy petition which contained a name that conformed to

2

none of its records, and somehow make a connection to her loan records. The Debtors, for their purposes, assert that the entity, Simm Associates, was PHEAA's collection agency. In fact, each of the invoices sent to Mary Langella, the co-borrower, and annexed to Mr. Baer's Certification as Exhibit C, identifies NCT as the owner of the loan. PHEAA is not, and never was the obligee with respect to this loan, nor did it have any authority to engage a collection agency on behalf of NCT.

Mr. Baer's testimony is the only admissible testimony presented in connection with this motion as to the status of PHEAA and its activities. Indeed, the only verifiable evidence presented by the Debtor in support of her motion is a transcription of voicemail messages left by Simm Associates, a collection agency with which PHEAA has no relationship, contractual or otherwise. PHEAA's own records indicate that all contact with PHEAA was initiated by the Debtor, and not the other way around. It is clear from this evidence that the Debtor has erroneously conflated phone calls from Simm Associates with PHEAA.

## POINT ONE
## PHEAA ENGAGED IN NO CONDUCT THAT CAN BE DESCRIBED AS VIOLATIVE OF THE AUTOMATIC STAY

The case law cited by the Debtors in support of their motion is inapposite to the facts in the case at bar, and presents a highly stilted view of the law, based upon instances in which various creditors or agencies egregiously and knowingly violated the automatic stay under facts that are highly distinguishable from the instant case relating to PHEAA. In each instance there was a palpable deprivation of the debtor by a creditor of the debtor's rights in and to personal or real property. For example, the Debtor's citation to the case of Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.), 355 B.R. 691 (Bankr. N.D. Ill. 2006), related to a note that

3

was originally owned by the debtor, as indicated by a predecessor case, which contained the findings of fact and conclusions of law salient to the subsequent holdings that are contained in the case cited by the Debtors. In the prior case, Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.), reported at 351 B.R. 529 (Bankr. N.D. Ill. 2006) two months before the holding in the citation given by the Debtors in their motion, it is noted that the violation of the stay occurred by reason of the sale by the debtor's creditor of a note owned by the debtor to a third-party when in fact that note was property of the debtor's estate. Accordingly, the gravamen of this case is that the debtor's creditor impaired the property of the debtor's estate by disposing of that property without notice to creditors or authority from the court. Id. at 544-45.

Similarly, the Debtors' citation to the case of Ford Motor Credit Co. versus Florio (In re Florio), 229 B.R. 606 (S.D.N.Y. 1999), involved the repossession of two automobiles owned by the debtor without relief from the court. The result of the loss of the vehicles caused the debtor to lose income and required the debtor to rent a replacement truck. This is a far cry from the facts pertinent in the case at bar, in which the Debtors do not even allege that any asset they owned was in any way shape or form compromised.

In yet another example, citation to In re Lile, 103 B.R. 830 (Bankr. S.D. Tx. 1989) the Debtors cite to a case that involves the seizure by the IRS of restaurant equipment belonging to an individual Chapter 11 debtor who was operating a restaurant and premises leased by a corporation that he owned in order to collect withholding taxes owed by the corporate taxpayer. The IRS also seized perishable food items located in the restaurant. The IRS made the seizure without any authority from the court by way of a motion for relief from the automatic stay, notwithstanding the clear evidence that the IRS was advised that the individual was a Chapter 11 debtor. The court found that this deprivation of property resulted in substantial damages, and that

it was willful under the circumstances, since the IRS was demonstrably cognizant of the existence of the bankruptcy proceedings against the debtor, and the agents chose not to give credence to the claims of the debtor that he and his wife owned the personal property in the restaurant. The property was thereafter returned but had less than 1/10 of the value that it was appraised for at the time of its seizure. The seizure also resulted in the termination of the lease for the restaurant and closing of the business. This resulted in a substantial assessment of damages assessed by the court. Id. at 837.

Similarly inapposite is the case of In re Crawford, 388 B.R. 506 (Bankr. S.D.N.Y. 2008), aff'd in part, vacated in part, by 476 B.R. 83 (2012). In this case, a state court referee conducted a sale of the debtor's home in foreclosure, notwithstanding the fact that the referee was previously notified of the bankruptcy case. Furthermore, the bank at issue attended and bid on the home at the sale, notwithstanding its clear knowledge of the existence of the bankruptcy case, and without seeking any relief from the automatic stay. Again, the Debtor erroneously cites a case relating to the deprivation by the creditor of property of the Debtor for the assertion of damages in the case at bar with completely inapposite facts. In the case of In re Mitchell, 2009 Bankr. Lexis 195 (Bankr. S.D. In. 2009),[2] cited by the Debtor, the creditor admitted that he had contacted the debtor directly, after he was notified of the debtor's bankruptcy filing and told to contact the debtor's attorney. No such conduct occurred in this case by PHEAA. Similarly, in the nonpublished opinion of In re Pachman, 2010 Bankr. Lexis 1221 (Bankr. S.D.N.Y. 2010), this Court had ruled that compensatory damages were appropriate after it had previously ruled, in an earlier motion, that the continuation of proceedings against the debtor in the rabbinical court, for the purpose of excommunicating the debtor and his family from the Jewish community

---

[2] Incorrectly cited by the debtor as 2009 Bankr. Lexis 105.

constituted a willful violation of the stay. Again, there is not so much as a hint of any analogy to the facts in the case at bar.

In another case cited by the Debtor, In re Dominquez, 312 B.R. 499 (Bankr. S.D.N.Y. 2004), this Court ruled that the continuation of foreclosure proceedings for failure of the debtor to pay taxes by the City of Newburgh, without resort to a motion for relief from the automatic stay, and based upon a legally erroneous interpretation of the law, amounted to a willful violation of the automatic stay entitling the debtor to damages. Id. at 503. In this instance, the City, in order to complete its foreclosure, filed an affirmation with the Orange County Supreme Court six months after the debtor filed the petition in bankruptcy, and upon which the state court relied in rendering its judgment of foreclosure. The City also personally presented an agent at the debtor's residence to serve her with notice that ownership her home had been transferred to the City. Id. at 504. Yet again, these egregious facts differ markedly from those in the case at bar in which the personnel of PHEAA did nothing more than receive phone calls from the Debtor and her counsel (or at least somebody in her counsel's office purporting to be a relative of the Debtor), and receive a fax letter advising of the Debtor's bankruptcy, and taking no further action, save for the billing of the Debtor's co-borrower as to which the automatic stay does not apply. Again, PHEAA attempted on two occasions to verify its records as to the Debtor's correct name, which, the Debtor failed and refused to do, notwithstanding the fact that the debtor had assumed the new name since procuring her student loan and which differed, accordingly, from the obligor in PHEAA's records.

In Diviney v. NationsBank, N.A., 225 B.R. 762 (B.A.P. 10th Cir. 1998), cited by the Debtor, the facts are similarly inapposite to those in the case at bar. In that case involving successive chapter 13 filings, the bank had entered into a settlement agreement in the first case

6

with the debtors, enabling it to repossess their car in the event of a default in payments. When the debtors later filed a second case and the bank was determined to have had notice of same, it nevertheless, repossessed the car, notwithstanding the fact that the automatic stay was reinstated in the second case.

Finally, the Debtors make an effort to make out the case for damages and for violation of the automatic stay by resort to the case of In re Gagliardi, 290 B.R. 808 (Bankr. D. Co. 2003). The court there found that the continuation of foreclosure proceedings against the debtor, notwithstanding the fact that the bank had received notice of the bankruptcy through its outside company with whom it contracted to search for bankruptcy filings, had continued to pursue the sale of the debtor's property, a residential home located in Trinidad, Colorado. Furthermore, evidence indicated that the debtor testified at a court hearing for his eviction that he had filed bankruptcy, but that counsel for the bank had nevertheless continued with the eviction proceedings for the pursuit of a default judgment against the debtor, to the point of changing the locks on the debtor's property and locking him out of his home. Id. at 813-14.

None of these facts even come close to those in the case at bar. Indeed all of the Debtor's cases are recitations of the application of damages for violation of the automatic stay in the context of fact situations in which the facts themselves are egregious in each instance. They all involve instances of the deliberate deprivation by the creditor of a property right enjoyed by the debtors. It is telling that, in order for the Debtor to attempt to ascribe liability for violation of the automatic stay against PHEAA, she needs to misconstrue the facts in a fashion that purports to allege some action on the part of PHEAA when, in fact, nothing of the sort took place. By reason of the foregoing, there has been no violation of the automatic stay by PHEAA and, if anything, the Debtor needs to be held to account for refusing even to verify her correct identity to PHEAA

7

so that it could ascertain correctly from its records whether or not the Debtor and the obligor identified in its records as Kassandra Kristofferson were one in the same. Accordingly, in evaluating the criteria utilized by the <u>Gagliardi</u> court to assess damages for violation of the automatic stay, the first determination must be whether or not a violation had in fact occurred. It is respectfully submitted to this Court that under the facts in the case at bar, there has been no showing that PHEAA has conducted itself in any fashion that violates the automatic stay. It did not contact the Debtor. On the contrary, it was the Debtor that contacted PHEAA in each instance. It was the Debtor that failed and refused to acknowledge her identity by identifying to PHEAA her correct name, when she was clearly using a name different from that on which she procured her student loan. Under these facts, it is clear that there can be no finding of a violation of the automatic stay by PHEAA.

**POINT TWO**

**11 U.S.C. § 106 PRECLUDES THE AWARD OF PUNITIVE DAMAGES AGAINST PHEAA AND OTHERWISE LIMITS THE EXTENT AND SCOPE OF COMPENSATORY DAMAGES THAT MAY BE AWARDED AGAINST THE GOVERNMENTAL UNIT**

Section 106 of title 11 provides, in pertinent part, as follows:

§ 106.   Waiver of sovereign immunity.

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

>  (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

>  (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

>  (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy

8

> Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
>
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
>
> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.
>
> (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
>
> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106 (Lexis 2017) (emphasis added). The nature of the jurisdiction to which states are subject in the Bankruptcy Court is considered to be *in rem*. See, Central Virginia Community College, et al. v. Katz, 546 U.S. 356, 369, 126 S.Ct. 990, 999, 163 L. Ed. 2d 945, 958 (2005)("in bankruptcy, 'the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.'). However, the scope of the state's consent to the waiver of sovereign immunity at the Constitutional Convention at which the bankruptcy clause was adopted for inclusion in the United States Constitution was limited. Id. 546 U.S. at 378, 126 S. Ct. at 1005, 163 L. Ed. At 963. The limitation on this jurisdiction is embodied in section 106 by the limitation prohibiting the award of punitive damages. 11 U.S.C. §106(a)(3) (Lexis 2017); See generally, Collier on Bankruptcy ¶ 106.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (Matthew Bender & Company, Inc. 2017).

Moreover, section 106(a)(3) also provides that fees and costs shall be consistent with 28 U.S.C. § 2412(d)(2)(A). This provision makes the relevant statute, the Equal Access to Justice Act, which ordinarily applies to awards against the United States, applicable to "any governmental unit." 11 U.S.C. § 106(a)(3). 28 U.S.C. § 2412(d)(2)(A) limits the compensation payable to attorneys and litigants in such instances and defines that limitation as follows:

> the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney's fees. (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) **attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)**

28 U.S.C. § 2412(d)(2)(A), (quoted in, Collier on Bankruptcy, supra, at ¶106.04[3])(emphasis added). Accordingly, section 106(a)(3) imports these restrictions and makes them applicable to all governmental entities, not just the federal government. Id. (citing, *inter alia*, Harris v. Sullivan, 968 F.2d 263 (2d Cir. 1992). To the extent that the Debtors seek damages in excess of these limitations, they should be disallowed.

## **CONCLUSION**

By reason of the foregoing, it is respectfully submitted to this Court that the Debtors' motion should be denied in its entirety, together with such other and further relief as to this Court seems just and proper.

Dated: July 25, 2017

                                      Law Offices of Douglas T. Tabachnik, P.C.
                                      Counsel to the Pennsylvania Higher Education Assistance Agency

                                      By: */s/ Douglas T. Tabachnik*
                                             Douglas T. Tabachnik
                                             (Admitted in this District)
                                             63 West Main Street
                                             Suite C
                                             Freehold, New Jersey 07728-2141
                                             (732) 780-2141
                                             dtabachnik@dttlaw.com